THE STATE OF FLORIDA ex rel. CARY D. LANDIS, Attorney General, *Relator*, v. THE CIRCUIT COURT FOR THE ELEVENTH JUDICIAL CIRCUIT OF FLORIDA, H. F. ATKINSON, Circuit Judge of the Eleventh Judicial Circuit of Florida, WILL ALLEN and HENRY TAYLOR, *Respondents.*

135 So. 870.

Original Prohibition.

Opinion filed July 6, 1931.

*Cary D. Landis,* Attorney General, and *Carl T. Hoffman,* Attorneys for Relator.

*Burwell & Sibley* and *Lilburn R. Railey,* Attorneys for the Respondents.

BROWN, J.—On June 23rd, 1931, the majority of this court, with which the writer concurred, sustained the demurrer of the relator to the answers filed by the respondents. On this, the 2nd of July, 1931, the above cause came on to be heard upon a petition for rehearing filed by respondents, a petition of the respondents for leave to file an amendment to their former answer, motion of relator that absolute or peremptory writ of prohibition do issue, and a petition of respondent that, if this court should grant the peremptory writ of prohibition, provision may be made that the Circuit Court may retain jurisdiction of the bill for the granting of such relief as may be proper and to make provision for the payment out of the assets of the Trust Company such expenses as have been incurred by the receiver under appointment of the Circuit Court, including reasonable compensation for services rendered to the receiver. This court has made an order permitting the filing of the amended answer.

Upon consideration of the petition for rehearing and the amended answer in connection with the original answer of the respondents, and of the briefs and oral arguments from the respective parties submitted in connection therewith, the writer has reached the conclusion that he, together with the majority of the court, overlooked certain important considerations entering into the sustaining of the demurrer to the answer heretofore filed, and that in the light of the answer as amended, the motion to make the alternative writ of prohibition peremptory and absolute should be denied, in so far as it pertains to the appointment by the Circuit Court of a receiver for the City Trust Company.

Upon more mature consideration, the writer is of the opinion that there is a field for the operation of both of

the statutes referred to in the former opinion of the majority of the court, to-wit: Sec. 19 of Chap. 13576 of the Laws of 1929, amending Sec. 4162 of Rev. Gen. Stats., relating to the authority of the Comptroller to appoint liquidators, and Sec. 23 of Chap. 6155 of the Laws of 1911, now appearing as Sec. 6144 of Comp. Gen. Laws, relating to the voluntary liquidation of trust companies subject to the orders of the Circuit Court.

Under Sec. 19 of Chap. 13576, the power of the Comptroller to appoint liquidators, under certain conditions, such as insolvency or threatened insolvency, etc. of banks and trust companies, is limited to banks and trust companies which are ''doing business in this State'', whereas Section 6144 makes special provision with reference to trust companies which go into voluntary liquidation.

Said section 19 of Chapter 13576, or that portion of it which is pertinent to the question here involved, reads as follows:

''On becoming satisfied, from the reports furnished to him by a State Bank Examiner, or upon other satisfactory evidence thereof, that any bank, banking firm, banker, banking or trust company, or corporation *doing business in this State* under the State laws has become insolvent and is in default, or that the affairs of any bank, banker, banking firm or trust company or corporation doing business in this State, under such State laws, is in an unsound condition, or threatened with insolvency because of illegal or unsafe investments or that its liabilities exceed its assets, or that it is transacting business without authority of law or in violation of law, or if the directors of any bank, banking or trust company, or corporation, or any banker or the management of any banking firm doing business in this State under the State laws, shall knowingly violate, or knowingly permit any of its officers, agents or servants to violate, any of the provisions of law relative to such bank, bankers, banking firms, banking or trust companies, or corporations doing business in this State, the rights, privileges and franchises shall be subject to be forfeited, and the State Comptroller

may in his discretion forthwith designate and appoint a liquidator to take charge of the assets and affairs of such bank, and require of him such bond and security as the Comptroller deems proper, not exceeding double the amount that may come into his hands, and such liquidator shall be subject to dismissal by the Comptroller, whenever in his judgment such dismissal is deemed necessary or advisable; when one liquidator is dismissed, another may be duly designated and appointed." (Italics supplied).

Said section 6144 of Comp. Genl. Laws reads as follows:

"Whenever any trust company shall determine by its board of directors, with the consent of the majority of its stockholders in interest, to discontinue its business and settle its affairs, it shall be lawful for such board of directors to file with the Comptroller of this State a certificate in writing, signed and acknowledged by such stockholders, expressing said consent, and likewise the certificate of said board of directors under the corporate seal setting forth such intention, and that *they thereby surrender to the State their corporate privileges and powers;* except for the purpose of distributing its assets and otherwise settling its affairs; but such trust company shall, nevertheless, be continued a body corporate for the term of three years after the time of such surrender for the purpose of prosecuting and defending suits by or against it and closing its concern; but not for any other business or purpose whatever; and the *said board of directors shall act as trustees for that purpose subject to the orders of the circuit court,* on application of any creditor or stockholder, and to removal or any action by said court. Said trustees shall make to the court, on the first Monday of each month an itemized report of their administration of the affairs of the said trust company in winding up the same, and shall at the same time file a copy thereof with the State Comptroller." (Italics supplied).

I do not mean to say that a bank or trust company could defeat the authority of the Comptroller to appoint a liquidator merely by closing its doors and ceasing to

do business, nor by a fraudulent attempt to defeat such authority by purporting to go into voluntary liquidation without his knowledge, consent or acquiescence, when such trust company was at the time insolvent. But it appears from the answer in this case as amended that the City Trust Company was not insolvent at the time of the passage of the resolution by the board of directors on January 20, 1931, with the consent of the majority of its stockholders, to go into voluntary liquidation. It appears from the answer as amended that at the time this resolution of the directors of January 20, 1931, was adopted with the consent of the stockholders, as provided by section 6144, and at the time of the execution on January 22 of the certificate in writing, signed and acknowledged by such stockholders, expressing said consent and likewise the certificate of the board of directors setting forth such intention and that they thereby surrendered to the State their corporate privileges and powers, as provided by said section 6144, the City Trust Company was entirely solvent; that it was after this was done that a distribution of more than $200,000.00 of its assets to its stockholders, which is alleged in the bill to have been fraudulent, was done.

It is also alleged in the amended answer that these steps were taken with the knowledge, consent and approval of the Comptroller, with the exception of the distribution of $40,766.92, which the Comptroller held had been improperly distributed to the stockholders and should be returned to the trust company. It is also alleged that before the making of application to the court of equity for a receiver, the Comptroller had had ample time to make an investigation of the affairs of the City Trust Company and the Guardian Trust Company to ascertain their solvency or insolvency, but had made no investigation, being satisfied with what had previously been done. That at the time of making the affidavit of May 8, 1931, upon which the Comptroller appointed a Liquidator of

the City Trust Company, Morgan S. McCormick, who purported to act as Presidnet of the City Trust Company and the Guardian Trust Company, was in Tallahassee having gone there, not at the request of the Comptroller, but at his own initiative because he had been advised that unless he and the other directors returned to the City Trust Company the $200,000.00 which it is alleged they had fraudulently appropriated, a receiver would be asked for, and that the said McCormick, in an endeavor to forestall the appointment of a Court Receiver went to Tallahassee and made said affidavit.

The amendment to the answer also alleges that at the time of the filing of a bill for a receiver and the appointment of a receiver by the Circuit Court of Dade County, the City Trust Company was not or would not have been insolvent if the monies which had been fraudulently appropriated by its officers and directors were put back into its treasury. It is further alleged that after the certificate of voluntary liquidation under Sec. 6144 C. G. L. was filed with the Comptroller on January 22, 1931, no investigation of the City Trust Company was made by the Comptroller thereafter and no supervisory powers exercised by him over said company after the filing of said certificate.

It will be observed that the directors and stockholders of the City Trust Company had taken the steps required under Section 6144 to go into voluntary liquidation. The effect thereof, under said statute, was to dissolve the corporation except for the purpose of distributing its assets and otherwise settling its affairs, the corporate existence being continued for three years after such surrender of its corporate privileges for the purpose of prosecuting and defending suits by or against it and closing its concern. The statute also provides that thereafter the board of directors became trustees for the purposes named in the statute, such as settling its affairs and distributing its assets, such trustees to act for that purpose subject

to the orders of the Circuit Court, on application of any creditor or stockholder, and subject to removal by said court. No doubt the legal effect of the situation would have made them trustees without any expression to that effect by the statute. The enforcement and protection of trusts, and their proper administration, is one of the ancient and well settled grounds of equity jurisdiction. Pomeroy, Eq. Juris., 4th ed., Sec. 151. Doubtless a court of equity would have had the right to require the proper administration of such a trust as this by the board of directors as trustees in the absence of any statute on the subject. But if there were any doubt on this subject the statute would remove it.

It is true that the Comptroller appointed a liquidator for the City Trust Company on the same day that the Circuit Court of Dade County appointed a receiver, to-wit, May 8, 1931, which receiver qualified and made bond on the same day. The appointment by the Comptroller of the liquidator could not become effective until he had given the notice required by the statute and obtained an order by a competent circuit judge confirming his action. So the Circuit Court of Dade County through its receiver was vested with possession of the res before any legally effective action had been taken and perfected by the Comptroller.

The question arises whether section 6144 C. G. L. was impliedly repealed in whole or in part by said section 19 of Chap. 13576, Laws of 1929.

At first, I was inclined to think that there was a partial implied repeal, as indicated by the able opinion of MR. JUSTICE WHITFIELD in connection with the ruling of this court on the demurrer to the original answer, but upon further study of these two statutes, I have reached the conclusion that there is a clear field of operation for each. There is no express repeal by the latter statute of the older one, and repeal by implication is not favored by the courts, and such implied repeal will not be held to exist

unless it is clearly established by showing some repugnancy between the terms of the latter statute and the earlier one. I cannot see that any repugnancy between these two statutes has clearly been made to appear, at least in cases where a voluntary liquidation has been properly determined upon and put into effect in accordance with the statute by a *solvent* trust company.

I have therefore reached the conclusion that the Circuit Court had jurisdiction to appoint a receiver for the City Trust Company, which was a trust company in course of voluntary liquidation under the provisions of said section 6144, upon the showing made by the bill of the maladministration of the trust reposed by the statute upon the directors, and I seriously doubt whether, even if the Circuit Court had not acted, the Comptroller would have had authority under the statute to appoint a liquidator for such trust company.

A more difficult question is presented by the appointment by the court of the same receiver as the receiver also of the Guardian Trust Company, which Company was not in course of liquidation, and was a going concern.

To answer this question requires a statement of the facts as alleged in the bill upon the strength of which the Circuit Judge appointed Henry H. Taylor, Esq., as receiver for both the City Trust Company and the Guardian Trust Company.

The bill alleges that the complainant was a creditor of the City Trust Company by reason of certain assignments and assumptions from the Miami Bank and Trust Company, The City National Bank and Trust Company, the City National Bank in Miami, The City Trust Company, and the Guardian Trust Company, all of which are set out in detail in the bill. It is then alleged that on January 21, 1931, all of the stock of the City Trust Company was owned by H. J. Spurway as receiver of the City National Bank in Miami; that the capital stock of the City Trust Company was $100,000.00, surplus $75,000.00, and undi-

vided profits of approximately $35,000.00, all of which was unimpaired and of full value; that of the thousand shares of the Guardian Trust Company, The City Trust Company owned 666-2/3 shares and that this stock was of the value of $100,000.00.

That prior to January 21, 1931, Morgan S. McCormick, President of the City Trust Company, devised a scheme whereby he could acquire all of the stock and assets of the City Trust Company and Guardian Trust Company, and all of the trust business of the two companies, by paying $200,000.00 to the receiver of the City National Bank in Miami, the receiver, (Spurway), having agreed to sell the stock of the City Trust Company for $200,000.00 in cash.

That to accomplish his fraudulent schemes and purposes, McCormick had two corporations organized under the laws of Florida, one being Administrator Company, and the other being Guardian Company, both named as defendants in the bill and neither possessing any assets or capital and being owned and controlled by Morgan McCormick. That McCormick procured from the First National Bank in Miami $200,000.00 with which to pay the purchase money for the stock of the City Trust Company, and on delivery of this to Spurway, the receiver, he had Spurway assign the stock of The City Trust Company to Administrator Company.

That as a simultaneous proceeding, the directors of The City Trust Company, after resigning one by one with the exception of McCormick, McCormick then had the remaining members of the Board to elect as their successors Fenters, Gustus, Travis and Buss. The Board of Directors on the same date (January 21, 1931) adopted a resolution under the provisions of Section 6144 of the Compiled General Laws of Florida (4201 Laws of Florida), placing the City Trust Company in voluntary liquidation, and immediately thereafter a stockholders' meeting was held and at said stockholders' meeting all of the stock was

voted to consent to said liquidation and to discontinue its business and settle its affairs as provided for in said Section 6144; that immediately thereafter the Board of Directors filed with the Comptroller of the State of Florida a certificate in writing signed and acknowledged by said stockholders, expressing their consent, and likewise the certificate of the Board of Directors under the corporate seal of the corporation, setting forth such intention, and they thereby surrendered to the state their corporate privileges and powers.

That, as a so-called liquidating dividend, the new Board of Directors paid to the Administrator Company $200,000.00 in cash which they took from the cash assets of the City Trust Company, and the Guardian Trust Company, they having by virtue of the ownership of the stock in The City Trust Company acquired the Guardian Trust Company. That the Administrator Company then handed to the representative of the First National Bank the $200,000.00 which had been nominally or supposedly advanced by the First National Bank, and through this "escrow", as it was termed by McCormick, the entire capital stock and surplus and undivided profits of The City Trust Company was washed out and its ownership acquired by the Administrator Company, McCormick's dummy, and no funds whatever were actually used for this purpose except the funds of the City Trust Company.

The bill charges that the representative of the First National Bank sat in with the meeting and did not release the funds under the supposed loan until he had received the funds paid by the Administrator Company, no actual money being loaned by the First National Bank, and this is why in his testimony in another case, submitted to the chancellor when the receiver was applied for in this case, McCormick refers to the matter as an "escrow".

That through a further fraudulent scheme and device the 666-2/3 shares of the Guardian Trust Company, of the actual value of $100,000.00, and which was held as

an asset of the City Trust Company, were taken out of The City Trust Company and assigned to the Guardian Trust Company, the other dummy company without capital or assets, and which is owned, dominated and controlled by McCormick. The exact method of this alleged "washout" or actual conversion of this asset is not clearly shown, only the fact is alleged that without actual payment of any value whatever the dummy Guardian Company now is claimed to own this valuable stock of the Guardian Trust Company.

That McCormick, in his testimony attached as an exhibit to the answer of the respondents to the rule issued by this Court, testifies that neither the Guardian Company nor the administrator Company have any assets or can respond to any liability by reason of the ownership of said stock, as is imposed by Section 6132 of the Compiled General Laws of Florida; that the only possible purpose in the conversion and assignment of this stock of the two trust companies is to defraud the beneficiaries of the trusts being administered by the two companies and the creditors of the two companies, and to secure to these two dummy companies the benefit of the full value of this stock of more than $300,000.00.

The bill further charges that although The City Trust Company is in voluntary liquidation under Section 6144 of the Compiled General Laws of Florida, yet it is administering over a thousand trust estates in violation of the provisions of said Section of said Statute, although The City Trust Company now has no assets and no stockholders upon whom an assessment for the value of the stock could be levied. That Morgan S. McCormick and the other trustees of The City Trust Company failed to make to the Court each month an itemized report of their administration of the affairs of The City Trust Company in winding up the same, or to file copies thereof with the Comptroller as required by Statute.

That at the time McCormick purchased the stock of

The City Trust Company using its assets for this purpose, it was engaged in a very lucrative trust business, administering more than a thousand trusts, which produced a profitable revenue and was a valuable solvent business.

The bill further charges that as a part of the fraudulent schemes McCormick is now through some device attempting to administer these trusts through commingling the same with the Guardian Trust Company, also owned and dominated by him, through placing the stock thereof in the Guardian Company. The Guardian Trust Company as agent of The City Trust Company collects all of the revenues from the administration of the trusts, but through its agreement for this purpose is relieved of liability in any way or in any respect for the obligation, liabilities or breaches of duty that may occur or may now exist in the administration of said trust business. This scheme enables McCormick to procure the entire trust business of The City Trust Company after converting all of its capital stock, surplus and undivided profits without assuming any liability for administration of said trust business, and to receive all of the benefits and profits therefrom. In this device and scheme it commingled and intermixed as part of its operating plan The City Trust Company in liquidation, the Guardian Trust Company, the Administrator Company and the Guardian Company, together with McCormick and his agents. In fact, McCormick is using all of these corporations and individuals as mere agencies for the furtherance of his fraudulent schemes, thereby destroying the protection which the law affords its creditors and beneficiaries under the trusts being administered.

The bill further charges that the complainant and all persons similarly situated will have their rights defeated and will suffer irreparable injury, loss and damage, and the laws of the State of Florida enacted for the protection of beneficiaries and creditors is now being violated

and will be violated and set at naught and all rights provided by Statute for the protection of your complainant and others will be defeated unless a receiver is appointed to take charge, control and custody of the assets of the City Trust Company and the Guardian Trust Company, for the purpose of liquidating the same as provided under Section 6144 of the Compiled Statutes of Florida.

That the trusts, estates and affairs of the Guardian Trust Company with the trusts, estates and affairs of The City Trust Company, are so inextricably interwoven through the schemes alleged in the bill that the Guardian Trust Company and The City Trust Company both may be regarded as one, and as a part and parcel of the scheme of McCormick to defeat and defraud the rights of creditors and beneficiaries. The Guardian Trust Company is collecting all fees and charges due The City Trust Company, and which should be an asset of The City Trust Company for the protection of its liabilities, but assumes no liability for the administration of the trusts and thereby deprives the creditors and beneficiaries of The City Trust Company of this asset.

While the foregoing allegations of the bill make an impressive showing, the writer is not clearly convinced that the facts alleged were sufficient to sustain the jurisdiction and authority of the circuit court to appoint a receiver for the Guardian Trust Company, which was not in process of liquidation under section 6144 C. G. L., but was a going concern. The alleged right of the complainant cestui que trust, under a trust of which the City Trust Company was trustee, to have that trust impressed upon and enforced out of the assets transferred to the Guardian Trust Company could have been or could be enforced, through proper action or actions brought by the court's receiver of the City Trust Company against the Guardian Trust Company, or, now that the Comptroller has appointed a liquidator for the Guardian Trust Company, on May 9th, 1931, by appropriate actions against

such liquidator. It would also appear that the interests of The City Trust Company and the Guardian Trust Company are, or will prove to be, in some respects antagonistic, making one man receiver for both companies impracticable. It seems to me, therefore, that while the Circuit Court's action in appointing Mr. Taylor as Receiver for the City Trust Company was valid and within its jurisdiction, upon the allegations of the bill and the evidence submitted to the chancellor in connection therewith, and that to that extent the motion for peremptory writ should be denied, its action in appointing Mr. Taylor as Receiver for the Guardian Trust Company was beyond its jurisdiction, and that the writ of prohibition to that extent should be made absolute.

I cannot see wherein the position above taken is in conflict with State v. Barns, 99 Fla. 1258, 128 So. 860, or any of the later cases decided by this court. See State v. Willmer, decided at the present term. These cases dealt with efforts to displace the statutory liquidator already in charge of the assets under appointment by the Comptroller and to put in his place a court receiver without any sufficient showing made therefor. Here the relator is seeking to displace a court receiver already in charge of the assets of a trust company which was placed in voluntary liquidation five months ago, and put in his place a liquidator appointed by the Comptroller. The position above taken is sustained by Pomeroy's Equity Jurisprudence, 4th ed., Vol. 1, Chapters I to III; King v. Pomeroy, 121 Fed. 287; Ex parte Amos, 93 Fla. 5, 112 So. 289; Thrasher v. Doig, 18 Fla. 809; Hillsborough Grocery Co. v. Ingalls, 60 Fla. 105, 53 So. 930.

Since this court sustained the demurrer to the answer of the respondents, the court has permitted the answer to be amended. The sufficiency of the answer as amended has not yet been ruled on by this court. In this connection, and in connection with the petition for rehearing, see 4 C. J. 641, Sec. 2529. The answer as amended ap-

pears to furnish a complete defense to the prayer for writ of prohibition in so far as the action of the circuit court in entertaining the cause and appointing a receiver for the City Trust Company is concerned, and its power and authority to proceed with said cause in that respect. The motion for the peremptory writ no doubt raises the question of the legal sufficiency of the answer as amended, and dispenses with the necessity of filing a formal demurrer.

I think therefore that the motion for the peremptory writ should be granted as prayed in so far as it affects the action of the court below with reference to the appointment or maintenance in office of a receiver for the Guardian Trust Company, but that in all other respects the motion for the peremptory writ should be denied.

BUFORD, C.J., AND ELLIS, J., concur.

WHITFIELD AND TERRELL AND DAVIS, J.J., concur in part and dissent in part.

DAVIS, J.—It has been held in a case decided at this term (State ex rel. George Meredith v. The Board of Trustees of the Salvation Army, et al., opinion filed June 26, 1931) that ''the issuance of a writ of prohibition to stop further proceedings in an equity case is undoubtedly authorized where no special circumstances are alleged in the bill of complaint bringing the case under some recognized head of equity jurisdiction warranting the relief prayed for, even though there is not a complete absence of any jurisdiction over the class of suit involved.''

The writ of prohibition applied for in this case is asked for only to the extent that the Circuit Court be prohibited from exercising any *further* jurisdiction in the pending equity suit in so far as the same relates to or affects the *liquidation* or *winding up* of the affairs of the City Trust Company and Guardian Trust Company, and interferes with the possession, custody or control of the property or assets of these companies by the Comptroller.

The writ of prohibition is also prayed to prohibit

Henry H. Taylor, as Court Receiver, from having or exercising any further charge, custody, control or possession of the assets, effects, property, accounts, books of account, and other things, including all real and personal property, equitable interests, trust estates, trust properties, trust deposits, trust rights and trust effects, trust collateral and trust assets, and all other assets and rights of the City Trust Company and Guardian Trust Company, and to require the same to be turned over by said Court Receiver to the Comptroller of the State of Florida or his duly appointed liquidator.

Will Allen, the complainant in the Chancery suit, is sought to be prohibited only so far as he is concerned with the further prosecution of his suit to have a Chancery receiver of the Circuit Court *supersede* the statutory liquidator of the Comptroller.

A writ of prohibition may be so framed as to reach and cut off the exercise of jurisdiction which is wholly unlawful or which is merely excessive. Such writ may issue in cases where jurisdiction was originally properly exercised but which has since ceased to be within the power or jurisdiction of the Court to continue to exercise in the future.

The appointment of a statutory liquidator for the City Trust Company and for the Guardian Trust Company appears to have been lawfully made by the Comptroller. The Comptroller's appointment entitled the Comptroller to assume charge of and through his liquidator to administer the affairs of the trust companies involved pursuant to the statutory mode prescribed for so doing.

It was the duty of the Circuit Court and of the parties proceeding therein by a Chancery proceeding, as well as of the Receiver appointed by the Court to recognize the authority of the Comptroller to take charge of and administer the assets of these trust companies under the statute, after the Comptroller made it appear that he had exercised his prerogative.

When the fact that the Comptroller had exercised his power in the premises was duly called to the Circuit Court's attention, it was the duty of that Court to recognize the Comptroller's authority in the premises and to order its own Court receiver to deliver over the affairs, assets, books, papers and properties of these trust companies to the liquidator appointed by the Comptroller, to be by him held and administered by the Comptroller as provided by law. Port Newark National Bank vs. Waldron, 46 Fed. (2nd) 296.

For the Circuit Court to so order would not abate the original Chancery suit filed in so far as it asserts rights and prays particular relief which the complainant has the right to ask for and obtain in his own right as a complainant in such a suit.. It does not prevent the complainant from making the Comptroller, or his liquidator, a party thereto for the purpose of having any final decree which may be entered become a binding adjudication on all adverse interests or parties represented by the Comptroller or his liquidator under the law after he takes charge of such institutions, as in ordinary cases.

The amended answer tendered has been permitted to be filed, but its consideration leads to the same conclusion heretofore expressed in the opinion filed by a majority of this Court in this case.

In the case of Basford, et al. v. Farmers Bank & Trust Co. and Ernest Amos, as Comptroller, 94 Fla. 636, which was decided without written opinion, this Court in October, 1927, affirmed an order made by the Circuit Court of Palm Beach County which permitted the Comptroller to intervene in an equity case in which the Court had already appointed a Court Receiver after the bank had closed but before the Comptroller had acted.

In that case the order appointing the Court Receiver was promptly vacated by the Circuit Court upon the petition of the Comptroller, who in that case as here, asserted his authority to appoint his own liquidator for the

bank. Upon appeal this Court affirmed the aforesaid action of the Circuit Court, because it recognized that the Circuit Court was without authority in such case to make any other kind of order.

In the case here, the Circuit Court should have followed the same proceedings which we have heretofore approved, and upon its refusal to do so, a writ of prohibition absolute should be granted in the particulars prayed by the relators.

Such writ would not preclude further prosecution of the chancery suit in the court below insofar as it does not conflict with our holding here. All matters connected with the court receivership *prior* to the time the Comptroller asserted his right to intervene are matters properly a part of the chancery cause and should be presented to be heard and decided in that case in the court below in the first instance.

As to the proceedings subsequent, which were in excess of the Court's proper jurisdiction after the Comptroller had presented to the court sufficient evidence to show his authority to act, and his right to be allowed to take charge, both the complainant in the Circuit Court and the Receiver are without standing to claim the special relief prayed in this Court, which should be denied here.

An absolute writ of prohibition, limited as hereinbefore pointed out, should be issued.

WHITFIELD AND TERRELL, J.J., concur.

PER CURIAM.—Mr. Chief Justice Buford, Mr. Justice Ellis and Mr. Justice Brown are of opinion that the action of the Circuit Court in entertaining jurisdiction in the cause of Will Allen, The City Trust Company, Guardian Trust Company and others in so far as the amended answer to the rule nisi in this cause shows was correct in so far as the appointment of a Receiver for the City Trust Company is involved, but that the orders in so far as it directs the Receiver to take over and liquidate the affairs of the Guardian Trust Company was in excess of

the Circuit Court's process. That the motion for a writ of prohibition should be denied in so far as the court's jurisdiction is involved in the matter of a Receiver for the City Trust Company, but that it should be granted to affect only the Court's orders in the matter of the Receiver's activities in relation to the affairs of the Guardian Trust Company. Mr. Justice Whitfield, Mr. Justice Terrell and Mr. Justice Davis are of opinion that the answer of the Circuit Judge is insufficient and that the writ of prohibition should be issued to the Circuit Court as prayed.

When the members of the Supreme Court sitting six members in a body and after full consultation it appears that the members are permanently and equally divided in opinion as to whether in an original proceeding the full relief sought should be granted, the full relief as sought will be denied but will be granted in so far as applicable to such phase of the case to which a majority of the court's members deem the relief sought to be appropriate.

Writ of prohibition denied as to Circuit Court's powers and jurisdiction to proceed in the cause against City Trust Company and granted in so far as the Court's powers are sought to be exercised in the matter of the appointment of a Receiver for Guardian Trust Company.

All concur.